**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **B.S. Jr., A.M.-1, and T.M.**

**No. 21-0104** (Berkeley County 19-JA-153, 19-JA-154, and 19-JA-155)

**MEMORANDUM DECISION**

Petitioner Mother A.M.-2, by counsel Christian J. Riddell, appeals the Circuit Court of Berkeley County's January 5, 2021, order terminating her parental rights to B.S. Jr., A.M.-1, and T.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Elizabeth Layne Diehl, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding petitioner had unauthorized contact with her ex-boyfriend M.R., finding her in contempt for that contact, denying her motion for an improvement period, and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner failed to protect B.S. from her live-in boyfriend, M.R. The DHHR alleged that B.S.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as A.M.-1 and A.M.-2, respectively, throughout the memorandum decision. Further, B.S. Jr is hereinafter referred to as B.S. throughout the memorandum decision.

1

disclosed that M.R. grabbed him from behind and pinned him to the floor. B.S. stated that he tried to call for help but M.R. put his hands over the child's mouth. M.R. later put twelve-year-old B.S. in a "choke hold and threw him back onto the floor using all his weight to pin the child down." The DHHR alleged that B.S. had three to four scratches on his face, which were several inches long and a half inch wide. B.S. alleged that on another occasion, M.R. used pepper spray in the child's room while he was in the room. B.S. stated that he ran into the bathroom to escape, and M.R. deployed the pepper spray under the bathroom door. Thereafter, M.R. allegedly threatened B.S., stating that he would punch the child in the face if he told anyone about the abuse. The DHHR alleged that B.S. had been subjected to non-accidental trauma, that petitioner and M.R. allowed one another to commit excessive corporal punishment against B.S., and that petitioner had knowingly allowed M.R. to physically abuse the child and failed to protect him from harm.

Petitioner stipulated to the allegations in the petition in July of 2020, and the circuit court adjudicated her as an abusing parent.[2] Petitioner and M.R. both testified that they had ended their relationship and M.R. was no longer living in the family home. The guardian presented evidence that a witness had seen M.R. at petitioner's home and that the witness believed he was still living in the home. Ultimately, the circuit court granted M.R.'s motion to be dismissed from the proceedings but found that it was in the children's best interests that petitioner and M.R. have no further contact, and so ordered. Thereafter, petitioner moved for a post-adjudicatory improvement period, to which the father of B.S. (B.S. Sr.) objected. According to B.S. Sr., petitioner had unauthorized phone contact with the child and attempted to manipulate the child's opinion with respect to visitation and placement. B.S. Sr. explained that the child's behavior drastically changed following petitioner's unauthorized phone contact. Upon the father's motion, the circuit court ordered that it would interview B.S. in camera in regard to petitioner's contact with him during the proceedings and to understand his wishes regarding visitation with petitioner.

The circuit court convened for a hearing on petitioner's motion for an improvement period in August of 2020. The DHHR and guardian advised that they had received photographs that demonstrated a continued relationship between petitioner and M.R., in violation of the circuit court's no contact order. The DHHR moved to continue the hearing in order to disclose

---

[2]Although the DHHR did not allege that petitioner or M.R. had abused A.M.-1 or T.L. in a specific manner, these children were abused children within the meaning of the West Virginia Code as they were children in the home at risk of abuse. This Court has held

> [w]here there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under [West Virginia Code § 49-1-201].

Syl. Pt. 2, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).

the photograph of the vehicles to the parties and to investigate the allegations. The guardian moved the circuit court to issue a rule to show cause why petitioner and M.R. should not be held in contempt of the circuit court's prior no contact order, which was granted.

Later, in August of 2020, the circuit court held a dispositional hearing and heard testimony regarding the contempt proceeding and petitioner's motion for an improvement period. The guardian presented testimony that vehicles belonging to petitioner and M.R. were observed and photographed next to each other at a local hotel. The photograph was admitted into evidence. Petitioner and M.R. both testified that they were staying in the hotel in question for a period of time. However, they both denied that they were aware of each other's presence at the hotel. M.R. testified that he had been staying at the hotel for over a month due to work in the area and provided a receipt for his stay. Petitioner's mother testified that she had chosen the hotel, and petitioner took her recommendation. She further testified that she was unaware that M.R. was staying at the hotel at the time. The circuit court found that the testimony of petitioner and M.R. that they did not have contact while at the hotel was not credible. The circuit court noted that the photograph depicted the parties' vehicles side by side and that the vehicles had been backed into the parking spaces, which the circuit court found was an attempt to hide the license plates. The circuit court found that petitioner and M.R. had violated the court's prior no contact order and that their "attempt to deny their actions in this regard is an afront to [the c]ourt" and evidenced their dishonesty during the proceedings. Based on their contact, the circuit court found petitioner and M.R. to be in contempt of the court's prior order.

The guardian also presented testimony from a Court Appointed Special Advocate ("CASA") volunteer who testified that petitioner professed to her that she was engaged to M.R. on the same day that she filed for divorce from the father of A.M.-1 and T.M., in February of 2020. The CASA volunteer described petitioner as "boastful" about her relationship and engagement with M.R. and described M.R. as her "rock." The parties introduced a post from petitioner's Facebook page, which had been posted in February of 2020, that announced the engagement. During her testimony, petitioner suggested that the Facebook post and engagement was a joke and the engagement ring depicted in her Facebook post was a fake ring that she purchased in jest. The circuit court found that, despite petitioner's testimony to the contrary, the engagement was "not a joke."

Petitioner also testified regarding M.R.'s treatment of B.S., which the circuit court found to be not credible. The court highlighted that petitioner's testimony wavered significantly. Notably, petitioner had previously admitted that M.R.'s physical restraint of B.S. was inappropriate. However, during her testimony, petitioner asserted that B.S.'s therapist applauded M.R.'s restraining of B.S. Petitioner later controverted this testimony and reiterated that M.R.'s use of restraint was wrong and constituted excessive corporal punishment. Similarly, petitioner asserted that the pepper spray incident was a joke, but also acknowledged that it caused harm to B.S. The circuit court found that petitioner had "a stunning under appreciation of the harm that has been done" to B.S.

The circuit court found that B.S.'s in camera testimony was credible and contradicted petitioner's testimony. In particular, B.S. testified that the first time he disagreed with M.R., petitioner told M.R. "that if he wanted to whip [B.S.] to go ahead." B.S. testified that petitioner

had promised him video games if he told the circuit court that he wanted to live with her. B.S. further testified that he engaged in multiple unauthorized phone calls with petitioner, which was in contradiction to her testimony that there had been only one phone call and it was brief.

Ultimately, the circuit court cited petitioner's dishonesty during the proceedings and her minimization of the harm that she caused to B.S. to deny her motion for an improvement period. The circuit court found that petitioner lacked the insight needed to be successful during an improvement period and had not satisfied her burden to be granted an improvement period. The circuit court further found that it was unlikely that petitioner could substantially remedy the conditions of abuse and neglect and that termination was the least restrictive dispositional alternative available. Accordingly, the circuit court terminated petitioner's parental rights by its January 5, 2021, order. This appeal followed.[3]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner's arguments are based entirely upon the circuit court's alleged error in finding that petitioner and M.R. had contact following the court's entry of a no contact order. She argues that the circuit court's conclusion that the parties had contact at the hotel was against the weight of the evidence below. In support, she highlights her own testimony, M.R.'s testimony, and her mother's testimony, which, in her opinion, established that the parties arrived at the hotel without knowledge of each other and without contact during the stay. Petitioner asserts that the circuit court simply disregarded this evidence in making its findings of fact. Upon our review, we find no error.

---

[3]The children's respective fathers were nonabusing parents, and the children have achieved permanency in the custody of their respective fathers.

Here, the circuit court's findings were heavily influenced by its determination that petitioner's testimony lacked credibility, and we find the circuit court afforded an appropriate weight to the evidence that petitioner emphasizes on appeal. As we have consistently held, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). We note that this credibility determination is supported by the contradictions between petitioner's testimony and that of B.S., which petitioner failed to explain below or on appeal. In fact, petitioner makes no mention of B.S.'s testimony nor its effect on her credibility. Petitioner ignores that she violated the circuit court's order in regard to phone calls with B.S. and that B.S. testified that petitioner attempted to manipulate his testimony by promising him video games. Absent petitioner's incredible testimony and the testimony of those who supported her claims, the circuit court considered a photograph depicting petitioner and M.R.'s vehicles parked side by side in a hotel parking lot and parked in such a way as to obscure their license plates. Based on that evidence, we are not left with a definite and firm conviction that a mistake has been committed. The circuit court's conclusion that the parties actually had contact during their stay at the hotel is plausible in light of the record provided, and, therefore, we find no clear error in the circuit court's finding that petitioner and M.R. had contact subsequent to the entry of the circuit court's no contact order.

Petitioner also argues that the circuit court erred in finding her in contempt based on her violation of the court's no contact order. Again, this argument is based entirely on the circuit court's alleged error in finding that the parties had contact following the entry of the court's no contact order. As explained to petitioner below, West Virginia Code § 61-5-26(d) permits a circuit court to "issue attachment for contempt and punish [the accused] summarily" for "disobedience to or resistance of . . . any lawful process, judgment, decree or order of said court." Based on petitioner's continued contact with M.R., as found by the circuit court and affirmed by this Court, we find no error in the circuit court's summary issuance of a finding of contempt. As we have found no error in that finding, we likewise find no error in the circuit court finding petitioner to be in contempt of a lawful court order.

Finally, petitioner argues that the circuit court erred in denying her motion for an improvement period and terminating her parental rights. Petitioner acknowledges that West Virginia Code § 49-4-610(2), which governs post-adjudicatory improvement periods, requires the parent to file "a written motion requesting an improvement period" and "demonstrate[], by clear and convincing evidence, that [they are] likely to fully participate in the improvement period." It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015); *see also In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (holding that a circuit court has the discretion to deny a motion for an improvement period when no improvement is likely).

Here, we agree with the circuit court that petitioner failed to meet her burden of proof to be granted an improvement period. Most notably, the circuit court found that petitioner lacked the insight to be successful in an improvement period based upon petitioner's wavering opinion as to the harm M.R. inflicted upon B.S. As this Court has held, "[i]n order to remedy the abuse

and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). The circuit court's observation that petitioner had "a stunning under appreciation of the harm that has been done" to B.S. is emphasized by petitioner's apparent defense of M.R.'s restraint of the child, which she had already admitted was excessive and caused harm to the child. As the circuit court remarked, petitioner admitted that "she would say whatever she needed to say in order to get an improvement period." Petitioner, whose testimony lacked credibility and consistency regarding her acknowledgement of the issues, did not prove by clear and convincing evidence that she was likely to participate in an improvement period, and we find no error in the circuit court's decision in this regard.

This same evidence supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the children. West Virginia Code § 49-4-604(d) sets forth that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future when the parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." As set forth above, petitioner's failure to acknowledge the conditions at issue have rendered them untreatable. This Court has found no error in the circuit court's determination that petitioner had failed to fully appreciate the harm caused to B.S. Accordingly, its finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future is supported by the record. Finally, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the record fully supports the requisite findings, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 5, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton